RECEIVED

NOV 0 8 2023

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF MINNESOTA, STATE OF COLORADO, STATE OF FLORIDA, STATE OF INDIANA, STATE OF IOWA<br>*Ex. rel.* Lisa Clark<br><br>Plaintiff,<br><br>v.<br><br>U.S. Bank National Association,<br><br>Defendant. | Case No. 23sc3460 WMW/JFD<br><br>**FILED *IN CAMERA* AND UNDER SEAL**<br><br>**FALSE CLAIMS ACT**<br><br>**WITH JURY TRIAL DEMANDED** |

COME NOW Relator Lisa Clark and for Plaintiff's Complaint against Defendant U.S. Bank National Association, state as follows:

### COMPLAINT

1. Relator Lisa Clark ("Relator"), by and through her attorneys, Carl Christensen, Christopher Wilcox, and the law firm of Christensen Law Office PLLC, brings this qui tam complaint against U.S. Bank National Association (hereinafter "U.S. Bank" or "Defendant") under the False Claims Act ("FCA"), 31 U.S.C §3729, *et seq.*, as amended, the Minnesota False Claims Act ("MFCA"), Minnesota Statutes Annotated ("M.S.A.") § 15C.01 et seq., the Colorado False Claims Act ("CFCA"), Colo. Rev. Stat. Ann. § 24-31-101 *et seq.*,



SCANNED
NOV 08 2023
U.S. DISTRICT COURT MPLS

the Florida False Claims Act ("FFCA"), FL Stat. § 68.081 *et seq.*, the Indiana False Claims Act ("INFCA"), IN Code § 5-11-5.5-1 *et seq.*, the Iowa False Claims Act ("IOFCA"), IOWA Code § 685 *et seq.* (collectively the "FCA States" and "State FCAs") and common law and equitable causes of action for payment by mistake and unjust enrichment.

## PRELIMINARY STATEMENT

2.      This is an action brought by Relator to recover damages and civil penalties on behalf of the United States of America and the FCA States for violations of the FCA, MFCA, CFCA, FFCA, INFCA, IOFCA, and the common law arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by Defendant, its agents, employees, or co-conspirators, or any combination thereof, related to the Homeowner Assistance Fund ("HAF") administered by the United States Treasury Department, as authorized by the American Rescue Plan Act of 2021 ("ARPA"). Pursuant to 31 U.S.C. § 3730(b)(2), and comparable provisions under the State FCAs, this *qui tam* action is brought in camera and under seal.

3.      The HAF program was established to mitigate financial hardships associated with the coronavirus pandemic by providing funds to

2

eligible entities for the purpose of preventing mortgage delinquencies, defaults, foreclosures, loss of utilities or home energy services, and displacements of homeowners experiencing financial hardship after January 21, 2020, through qualified expenses related to mortgages and housing.

4.    This action arises out of Defendant's unlawful enforcement of expired, unenforceable, and time-barred mortgages resulting in the payment of HAF funds to Defendant to which it was not entitled.

5.    This is an action for treble damages and penalties for each false claim and each false statement under the FCA, 31 U.S.C. §3729, *et seq*., as amended, the MFCA, M.S.A § 15C.01 *et seq*., CFCA, Colo. Rev. Stat. Ann. § 24-31-101 *et seq*., the FFCA, FL Stat. § 68.081 *et seq*., the INFCA, IN Code § 5-11-5.5-1 *et seq*., the IOFCA, IOWA Code § 685 *et seq.,* and to recover money for common law and equitable causes of action for payment by mistake and unjust enrichment.

6.    The allegations of this Complaint arise from Relator's first-hand knowledge of the fraudulent and unlawful practices of Defendant. Information about Defendant's fraudulent and illegal conduct is detailed further in the paragraphs below.

3

## **PARTIES**

7.    Relator is a resident of Washington County, Minnesota who forestalled Defendant's unlawful foreclosure action by securing funds through the United States Department of Treasury's Homeowner Assistance Fund. All facts alleged herein are based upon the personal knowledge of Relator. Relator is the original source of the information contained herein.

8.    Plaintiff, the United States of America, acting through the United States Department of the Treasury, administers the HAF program as authorized by the American Rescue Plan Act of 2021.

9.    Plaintiff, the State of Minnesota, received $109 million in HAF funds from Plaintiff the United States of America, which were administered by the Minnesota Housing Finance Agency ("Minnesota Housing") and distributed through the HomeHelpMN program to county agencies throughout Minnesota, including but not limited to, the Washington County Community Development Agency.

10.    Plaintiff, the State of Colorado, received approximately $175 million in HAF funds from Plaintiff the United States of America, and administered and distributed the HAF funds to Colorado residents through the Colorado Department of Local Affairs' Division of Housing.

4

11.     Plaintiff, the State of Florida, received approximately $676.1 million in HAF funds from Plaintiff the United States of America and administered and distributed the HAF funds to Florida residents through the Florida Department of Economic Opportunity.

12.     Plaintiff, the State of Indiana, received approximately $168 million in HAF funds from Plaintiff the United States of America and administered and distributed the HAF funds to Indiana residents through the Indiana Housing and Community Development Authority.

13.     Plaintiff, the State of Iowa, received approximately $50 million in HAF funds from Plaintiff the United States of America and administered and distributed the HAF funds to Iowa residents through the Iowa Finance Authority.

14.     Defendant U.S. Bank National Association, successor by merger to U.S. Bank National Association ND, is a National Association organized and existing under the laws of the United States of America.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction under the FCA pursuant to 28 U.S.C. §§ 1331 & 1345, and 31 U.S.C. § 3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729.

This Court also has supplemental jurisdiction over the state claims under 28 U.S.C. §§ 1367.

16.    Under 31 U.S.C. § 3730(e)(4)(A), there has been no statutorily relevant public disclosure of substantially the same "allegations or transactions" alleged in this Complaint.

17.    The Court may exercise personal jurisdiction over Defendant under 31 U.S.C. § 3732(a) and (b) because acts proscribed by the FCA, 31 U.S.C. § 3729, occurred in this District, and Defendant can be found, resides, or transacts business in this District.

18.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) & (c), and 31 U.S.C. § 3732, because Defendant regularly conducts business in the State of Minnesota.

## FALSE CLAIMS ACTS

### The Federal False Claims Act

19.    The FCA was enacted in 1863 during the Civil War. Congress amended the FCA in subsequent years to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments

6

create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

20. The FCA, as amended, provides that any person who knowingly submits a false or fraudulent claim to the United States Government for payment or approval, or makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government, is liable for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461; Public Law 104-410) for each false claim, plus three times the amount of damages sustained by the government for each claim. *See* 31 U.S.C. § 3729(a); and (b) 28 C.F.R. § 85.3.

21. The Act further allows any person having knowledge of a false or fraudulent claim against the government to bring an action in federal district court for herself and for the United States of America, and to share in any recovery.

22. The FCA defines a "claim" to include any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States government

7

provides any portion of the money or property which is requested or demanded, or if the government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested. See 31 U.S.C. § 3729(b)(2).

23. For purposes of the FCA, "the terms 'knowing' and 'knowingly' mean that a person, . . . (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(b). "[N]o proof of specific intent to defraud is required" for a successful claim under the FCA. *Id.*

### The Minnesota False Claims Act

24. The Minnesota False Claims Act, M.S.A. § 15C.01 *et seq*, provides for liability for any person who "knowingly presents, or causes to be presented, to an officer or employee of the state or a political subdivision, a false or fraudulent claim for payment or approval," or who "makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 15C.02(a)(1) and (2).

25. For purposes of the MFCA, "the terms 'knowing' and 'knowingly' mean that a person, . . . (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts

8

in reckless disregard of the truth or falsity of the information." M.S.A. § 15C.01. "[N]o proof of specific intent to defraud is required" for a successful claim under the MFCA. *Id.*

26.   A defendant found to have violated the MFCA may be liable for a civil penalty between $5,500 and $11,000 for each violation, plus three times the amount of damages sustained by the state because of defendant's conduct.

27.   The MFCA allows private persons to file suit for violations of the MFCA on behalf of the State of Minnesota.

**The Colorado False Claims Act**

28.   The Colorado False Claims Act, Colo. Rev. Stat. Ann. §24-31-101 *et seq*, provides that "a person is liable to the state for a civil penalty of not less than eleven thousand eight hundred dollars and not more than twenty-three thousand six hundred dollars per violation, plus three times the amount of damages that the state sustains because of the act of that person, if that person: (a) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (b) knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; . . . ." Colo. Rev. Stat. Ann. §24-31-1203.

9

29. For purposes of the CFCA, the terms "knowing" and "knowingly" mean that a person, with respect to information about the claim: (1) has actual knowledge of the falsity of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." CFCA. § 24-31-1202(4)(a). [N]o proof of specific intent to defraud is required" for a successful claim under the CFCA. *Id.* at (4(b).

30. A defendant found to have violated the CFCA may be liable for a civil penalty between \$11,800 and \$23,600 for each violation, plus three times the amount of damages sustained by the state because of defendant's conduct. *Id.* at 24.31-1203(1).

31. The CFCA allows private persons to file suit for violations of the CFCA on behalf of the State of Colorado. *Id.* at 24-31-1204(3)(a).

### The Florida False Claims Act

32. The Florida False Claims Act, FL Stat. § 68.081 *et seq*, provides that "any person who (a) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; [or] (b) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim; . . . is liable to the state for a civil penalty of not less than \$5,500 and not more than \$11,000 and for treble the amount of damages the

10

state sustains because of the act of that person." FL Stat. § 68.082(2)(a) and (b).

33.     For purposes of the FFCA, the terms "knowing" or "knowingly" means "with respect to information, that a person: 1. Has actual knowledge of the information; 2. Acts in deliberate ignorance of the truth or falsity of the information; or 3. Acts in reckless disregard of the truth or falsity of the information. No proof of specific intent to defraud is required. Innocent mistake shall be a defense to an action under this act." *Id.* at (1)(c).

34.     A defendant found to have violated the FFCA may be liable for a civil penalty between $5,500 and $11,000 for each violation, plus three times the amount of damages sustained by the state because of defendant's conduct. *Id.* at (2).

35.     The FFCA allows private persons to file suit for violations of the FFCA on behalf of the State of Florida. *Id.* at FL Stat. § 68.083(2).

### The Indiana False Claims Act

36.     The Indiana False Claims Act, IN Code § 5-11-5.5-1 *et seq*, provides that "A person who knowingly or intentionally: (1) presents a false claim to the state for payment or approval; (2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state; . . . is, except as provided in subsection (c), liable to the state for a civil penalty

11

of at least five thousand dollars ($5,000) and for up to three (3) times the amount of damages sustained by the state. In addition, a person who violates this section is liable to the state for the costs of a civil action brought to recover a penalty or damages." IN Code § 5-11-5.5-2(b)(1) and (2).

37. The IFCA allows private persons to file suit for violations of the IFCA on behalf of the State of Indiana. *Id.* at 5-11-5.5-4(a).

### The Iowa False Claims Act

38. The Iowa False Claims Act, Iowa Code § 685 *et seq*, provides that "A person who commits any of the following acts is liable to the state for a civil penalty of not less than and not more than the civil penalty allowed under the federal False Claims Act, as codified in 31 U.S.C. § 3729 *et seq*., as may be adjusted in accordance with the inflation adjustment procedures prescribed in the federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, for each false or fraudulent claim, plus three times the amount of damages which the state sustains: a. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. b. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Iowa Code § 685.2(1).

39. For purposes of the IOFCA, the terms "knowing" or "knowingly" "means that a person with respect to information, does any of the following:

12

(1) Has actual knowledge of the information. (2) Acts in deliberate ignorance of the truth or falsity of the information. (3) Acts in reckless disregard of the truth or falsity of the information. b. "Knowing" or "knowingly" does not require proof of specific intent to defraud." Iowa Code § 685.1(7).

40. The IOFCA allows private persons to file suit for violations of the IOFCA on behalf of the State of Iowa. *Id.* at § 685.3(2)(a).

## THE UNITED STATES DEPARTMENT OF THE TREASURY'S HOMEOWNER ASSISTANCE FUND

41. The American Rescue Plan Act of 2021, also called the COVID-19 Stimulus Package, is a $1.9 trillion economic stimulus bill passed by the 117th United States Congress and signed into law by President Joe Biden on March 11, 2021 to speed up the country's recovery from the economic and health effects of the COVID-19 pandemic and the ongoing recession. Section 3206 of the American Rescue Plan Act of 2021, Pub. L. No. 117-2 (March 11, 2021) and codified at 15 USC 9058d.

42. The American Rescue Plan Act of 2021 provided funding for the Homeowner Assistance Fund ("HAF"), administered by the United States Department of the Treasury.

43. HAF is a federal assistance program that provides up to $9.961 billion for states, territories, and tribal entities to provide financial relief for homeowners to prevent mortgage delinquencies and defaults, foreclosures,

13

loss of utilities or home energy services, and displacement of homeowners experiencing financial hardship after January 21, 2020.

44.   HAF funds are administrated and distributed through state agencies.

45.   HAF funds are administered in Minnesota by the Minnesota Housing Finance Agency ("Minnesota Housing) and distributed through Minnesota's HomeHelpMN program.

46.   HomeHelpMN provides financial assistance for homeowners in Minnesota behind on their mortgage and other past-due housing expenses due to the COVID-19 pandemic.

47.   Minnesota received $109 million to help homeowners make their housing payments.

48.   HomeHelpMN started on May 7, 2022 and stopped accepting applications on July 7, 2023.

49.   The HomeHelpMN program is subject to the Minnesota Homeowner Assistance Fund Allocation Plan as approved by the U.S. Department of Treasury as well as all applicable federal and state guidance, regulations, and statutes.

50.   Prior to its launch, Minnesota Housing strived to onboard as many servicers as possible and executed MN HAF Collaboration Agreements

with 150 participating servicers in HomeHelpMN, including U.S. Bank. Once a servicer agreed to participate in HomeHelpMN, Minnesota Housing coordinated with the servicer to determine and set-up the path for exchanging borrower information.

51.   Minnesota Housing engaged counties throughout Minnesota as participating partners to HomeHelpMN. Eighty-two of Minnesota's eighty-seven counties participated in the program as third-party vendor payees, including Washington County.

52.   HAF funds are administered in Washington County by the Washington County Community Development Agency.

53.   Similar HAF programs are or were administered, and federal funds distributed, in Colorado, Florida, Indiana, and Iowa.

## HOMEOWNER ASSISTANCE FUND ADMINISTRATION AND COMMUNICATIONS BETWEEN ADMINISTERING AGENCY AND MORTGAGE SERVICERS

54.   The National Council of State Housing Agencies and the Housing Policy Council, working with HAF administering agencies and mortgage loan servicers, developed a template Common Data File ("CDF") to facilitate standardized communication and efficient information exchange between state HAF Administering Agencies and mortgage loan servicers collaborating to serve HAF-assisted homeowners. The HAF CDF is based substantially on

a protocol developed by the Treasury Department for the Great Recession-era Hardest Hit Fund ("HHF") program. *See The Homeowners Assistance Fund Common Date File Toolkit for CDF v.7.3 and Training Guide*, Draft Dated Aug. 31, 2021.

55. The HAF CDF was designed to serve as an efficient, common protocol for HAF Administering Agencies and mortgage loan servicers to exchange homeowner, program, loan and payment information in bulk.

56. All state HAF administrating agencies and servicers were encouraged to maintain a master list of their HAF partners and to enter into Servicer Cooperation Agreements. Upon information and believe, Defendant was listed on Servicer Cooperation Agreements in Colorado, Florida, Indiana, Iowa, and Minnesota.

57. State administrative agencies were also encouraged to develop internal processes to securely store and preserve all CDF data and records related to their HAF programs.

58. Each CDF record served a specific communication function in the exchange between state HAF administrating agencies and servicers. Among the record types were the "I" record, which was the initial request/submission record from the states to the servicers to launch the HAF CDF document exchange process.

16

59. In response to the "I" record, servicers sent "V" or "Validation" records to the states with the validation information for loans.

60. Servicers then sent an "X" record to the states to indicate an expected payment.

61. Also among the records was the "P" record, which was sent from servicers to the states to indicate payments had been applied to loans.

62. The following process outlines the file exchange points between states and servicers for the HAF mortgage reinstatement program (the "R Program"):

CDF Exchange Process and Activities – Reinstatement (R) **See Appendix F**

This process outlines the file exchange points between the states and Servicers including record types being transmitted.

| HAF Reinstatement Program | | |
|---|---|---|
| **HAF Process steps** | **State** | **Servicer** |
| I - State Initial Submission | State sends file to Servicer with initial request along with a PDF of the Third-Party Authorization (TPA) | Servicer receives file and TPA provided by the state. Any foreclosures that are not scheduled within 7 days are postponed for 45 days. |
| V - Servicer Validation | State receives file and conducts underwrite to approve or decline the borrower. | Servicer validates data and TPA received from the state. If a complete, servicer returns the data file along with additional borrower, loan and payment information. Foreclosure action is on hold for 45-days to allow state to fund. |
| O - Servicer Objection | State receives file, reviews objection decisions. If the state wishes to approve the borrower, objection reasons from the Servicer need to be resolved and a new I-record sent. The state can decline the borrower following an objection from the Servicer, but this is not required. | Servicer sends objection file with data along with reason(s) for objection. Includes complete borrower, loan and payment data, as long as the TPA was received. |
| A - State Approval | State sends file to Servicer with approval and program details. Funds can be transferred after 48 hours of sending an A-record. | Servicer receives file, and codes loan to be ready to accept funds. |
| D - State Decline | State sends file Servicer with decline and decline reason. | Servicer receives file, updates system. Normal servicing activities are resumed. |
| B - State Bulk Payment | State sends file with payment details to Servicer. Separately sends funds via ACH wire within 48 hours of sending a B-record. The B-record should contain the applicable transaction reference number. | Servicer receives file and ensures payments are applied correctly. Discrepancies are resolved in communication with the state directly. |
| P - Payments Applied | State receives payment application information from Servicer | Servicer sends P file to indicate payments have been received, how these were applied and status of any discrepancies (overage/shortage) |
| T - State Termination | State sends file with termination notice to Servicer. | Servicer receives termination notice and updates systems. At program completion, Servicer understands the state will inform the borrower of program termination. Normal servicing will resume. |
| Q - Re-Quote (new I record) | State sends to advise reinstatement good through date has expired to request a new quote. | Servicer receives file and proceeds to update the reinstatement quote for the received record. |
| Y - Re-Validation | State receives file. If approval (A record) has not yet been sent, state conducts underwrite to approve or decline. If already approved, state can proceed with transfering funds or terminate the borrower's participation. | Servicer sends refreshed reinstatement data in response to a Q-record request from the state. |
| W - Withdrawn | State receives records of withdrawn borrowers detailing withdrawn reason for each borrower. (State required to send T if after Approval). | Servicer sends record to indicate borrower has been withdrawn from the program. Sent after V record. Reason for withdrawal indicated in the "HHF Withdrawn" Field. |
| C - Correction | State receives correction file from Servicer and updates information, as applicable | Servicer sends correction file with updated information to the state. Not typically part of Reinstatement flow, but is permitted if material information changes. |

63.   Below is a schematic of the HAF CDF sequence flow for the R

Program:



**FACTUAL ALLEGATIONS**

64.   On information and belief and in connection with a certain U.S.

Bank Equiline Agreement, Clark executed and delivered to U.S. Bank, a

Mortgage dated September 11, 2002 (the "Mortgage"). A true and correct

copy of the recorded Mortgage is appended hereto as Exhibit 1.

65.   On information and belief, U.S. Bank issued near identical

mortgages in the states of Colorado, Florida, Indiana, and Iowa.

66.   Paragraph 4 of the Mortgage contains the following provision:

18

4.  **SECURED DEBT AND FUTURE ADVANCES**. The term "Secured Debt" is defined as follows:
    A.  Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and D their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*

    B.  All additional sums advanced and expenses incurred by Leader for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

67.    U.S. Bank's mortgages routinely fail to specifically identify the

debt(s) secured and fail to include a final maturity date of such debt(s).

68.    Clark's Mortgage is one such mortgage that does not include a

final maturity date.

69.    Minnesota's statute of limitations on mortgage foreclosures,

Minn. Stat. § 541.03,[1] provides that the limitation period runs from the date

of the mortgage unless the maturity date is "clearly stated in such mortgage":

> Subd. 1. Limitation. No action or proceeding to foreclose a real estate mortgage, whether by action or advertisement or otherwise, shall be maintained unless commenced within 15 years from the maturity of the whole of the debt secured by the mortgage...

> Subd. 2. When time begins to run; commencement of proceedings. The time within which any such action or proceeding may be commenced shall begin to run from the date of such mortgage, unless the time of

---

[1] Colorado, Florida, Indiana, and Iowa have similar statutory schemes. *See e.g.* C.R.S.A. § 38-39-205; C.R.S.A. § 38-39-201; F.S.A. § 95.281; IC 32-28-4-2; IA ST § 614.21

the maturity of the debt or obligation secured by such mortgage shall
be clearly stated in such mortgage.

70. The Mortgage need not state a specific calendar date to clearly
state a maturity date. However, to be clearly stated in the mortgage, the
information necessary to determine the maturity date of the debt must be
included on the face of the mortgage. *See e.g. Polish Union of the U.S. of N.
Amer. v. Kruszewski,* 171 Minn. 252, (1927); *DeSalle v. Gibraltar Title
Agency L.L.C.*, 621 N.W.2d 31 (Minn. Ct. App. 2000).

71. Moreover, for purposes of the application of Minn. Stat. § 541.03,
the maturity date may not be incorporated into the mortgage by reference to
another document. *See Vossen v. Parker*, 609 N.W.2d 290 (Minn. Ct. App.
2000).

72. Because Clark's Mortgage does not contain a maturity date, the
statute of limitations for foreclosure of Clark's mortgage expired on
September 11, 2017.

73. At the time of the expiration of the limitations period, Clark's
Mortgage was unrecorded, and Clark's first mortgage had already been
refinanced, twice.

74. U.S. Bank recorded the Mortgage along with an affidavit of
unrecorded interest on May 7, 2021, nearly twenty years after it was granted.
Clark was not provided notice of U.S. Bank's recording efforts.

20

75.     Following the expiration of the limitations period, U.S. Bank commenced a reformation action of which Clark was given no notice, through which U.S. Bank "reformed" the mortgage to correct the marital status of the mortgagors. U.S. Bank did not reform the mortgage to "add" a maturity date.

76.     Despite the statute of limitations having run, on December 13, 2022, U.S. Bank sent Clark a "Notice of Default" purporting to alert Clark to a default for failure to pay the monthly installments thereunder.

77.     In that communication, U.S. Bank represented that it "must receive certified funds in the amount of $32,354.56 for payments and $25.00 for late charges, plus any additional payments and late charges that may come due within thirty (30) days from the date of this letter."

78.     In that communication, U.S. Bank represented that "Additional interest, late charges, attorney fees, foreclosure cost and other charges may be incurred during the next 30 days."

79.     That representation was false because the mortgage could not be foreclosed by operation of Minn. Stat. § 541.03.

80.     In that communication, U.S. Bank represented that it had the right to accelerate the sums "secured by the security instrument" and the right to sell the property.

81.    Those representations were false because the mortgage could not be foreclosed by operation of Minn. Stat. § 541.03.

82.    Finally, U.S. Bank further represented that "foreclosure and public sale of the property" may follow if the account was not brought current within thirty (30) days from the date of the letter.

83.    That representation was a false threat because the mortgage could not be foreclosed by operation of Minn. Stat. § 541.03.

84.    Clark was unable to bring the purported mortgage current within 30 days, as demanded by U.S. Bank —she was not aware at that time that she had no legal obligation to do so.

85.    Clark sought assistance from U.S. Bank, but it declined to provide any assistance — because Thomas L. Clark Jr., Clark's ex-husband, was the only signatory to the promissory note, U.S. Bank steadfastly refused to communicate with Clark because she was not a borrower.

86.    Despite providing U.S. Bank with a copy of her divorce decree and otherwise undertaking the necessary steps to confirm her status as a successor in interest, U.S. Bank continued to refuse to communicate with Clark.

87.    On December 19, 2022 Clark sought assistance from Washington County Community Development Agency and was connected with Sheila Hawthorne—Homeowner Specialist and HUD Certified Housing counselor.

88.    On or around March 24, 2023, Hawthorne assisted Clark in completing and submitting an application to HomeHelpMn, which included U.S. Bank's December 13, 2022 correspondence containing an explicit threat of foreclosure, and copies of title documents, including the Mortgage, along with a link to U.S. Bank's Successor in Interest policies.

89.    HomeHelpMN submitted Clark's reinstatement materials in the form of an "I" record to US Bank, resulting in U.S. Bank submitting the "v" record on March 30, 2023.

90.    In connection with its communications with HomeHelpMN, U.S. Bank did not alert HomeHelpMN that its mortgage was unenforceable by virtue of Minn. Stat. § 541.03.

91.    Following receipt of the "v" record, HomeHelpMN immediately approved payment to U.S. Bank of the funds purporting to permit Clark to avert the foreclosure.

92.    Following its receipt of payment, U.S. Bank did not alert HomeHelpMN that its mortgage was unenforceable by virtue of Minn. Stat. § 541.03

23

93.    As a result of Washington County's work with Relator, U.S. Bank was paid $37,608.46 to reinstate the mortgage, which was paid through the HomeHelpMN program, funded by the Dept of Treasury's Homeowner Assistance Fund, part of the ARP Act.

94.    U.S. Bank knew its representations to Clark in threatening foreclosure on an expired mortgage were false and deceptive.

95.    First, as a matter of readily identifiable public record, Clark's Mortgage was not the only mortgage U.S. Bank holds identically lacking in a maturity date for which it has been desperate to find a way to recover payment on what is effectively unsecured debt.

96.    Second, in circumstances where U.S. Bank is not paid from HAF funds following its unlawful threat of foreclosure, a non-exhaustive search by counsel reveals that U.S. Bank attempts to perform an end-run around the statute of limitations with an erroneous reformation claim to "add" a maturity date to the mortgage. These reformation claims are based on identical and false allegations of "mutual mistake". *See e.g.* 27-CV-23-6664; 27-CV-23-4044; 19HA-CV-23-3667; 27-CV-23-8883; 69DU-CV-23-1103; 19HA-CV-23-1828; 09-CV-23-650; 02-CV-23-1535; 27-CV-23-3339; 69DU-CV-23-412; 27-CV-23-975; 27-CV-23-119.

24

97.     These cases reflect a pattern of either: (a) voluntary dismissal upon presentation of a defense, or (b) default judgment because the statute of limitations is an affirmative defense and because U.S. Bank fails to apprise the district courts from which it seeks relief of the institutional scope of the issue, so as to alert those courts that U.S. Bank's allegations of mutual mistake are made in bad faith and are unsupported.

98.     As a participating servicer in the HomeHelpMN program, Defendant knew that the federal government was providing funds to states to assist owners facing foreclosure.

99.     U.S. Bank knew that the funds to pay off the Clark mortgage came from the State of Minnesota's HAF program, administered through HomeHelpMN.

100.     The financial assistance is disbursed directly to the lien holder and/or third-party payee. The party who is owed must agree to accept the assistance. U.S. Bank therefore agreed to accept funds it knew it was not legally entitled to.

101.     Despite these representations, U.S. Bank threatened to and attempted to foreclose mortgages beyond the applicable statute of limitations knowing that HAF funds would be used to assist homeowners in reinstating mortgages to avert unlawful foreclosure.

102. U.S. Bank engaged in this practice, or similar practices in Minnesota, and on information and belief, Colorado, Florida, Indiana, and Iowa.

103. The Servicer Agreements between U.S. Bank and the FCA States specifically provides: "FALSE STATEMENT: The Servicer understands that false statements or claims made in connection with this Agreement may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law.

## CLAIMS

### COUNT I
### FALSE CLAIMS ACT
### 31 U.S.C. §3729(a)(1)(a)

104. Relator realleges and incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

105. By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(a).

106. The United States, unaware of the foregoing circumstances and conduct of the Defendant, made full payments that resulted in its being damaged in an amount to be determined.

107. Under the FCA, the United States is entitled to treble damages. Additionally, the United States is entitled to the maximum penalty for each and every false and fraudulent claim paid or approved arising from the Defendant's fraudulent conduct as described herein.

## COUNT II
## FALSE CLAIMS ACT
## 31 U.S.C. §3729(a)(1)(b)

108. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

109. By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, to get false or fraudulent claims paid or approved by the United States Government in violation of 31 U.S.C. § 3729(a)(1)(b).

110. The United States, unaware of the foregoing circumstances and conduct of the Defendant, made full payments that resulted in its being damaged in an amount to be determined.

111. Under the FCA, the United States is entitled to treble damages. Additionally, the United States is entitled to the maximum penalty for each and every false and fraudulent claim paid or approved arising from the Defendant's fraudulent conduct as described herein.

## COUNT III
## MINNESOTA FALSE CLAIMS ACT
**Minnesota Statutes Annotated § 15C.01 *et seq.***

112. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

113. By virtue of the acts described above, Defendant knowingly presented, and/or caused to be presented, to an officer and/or employee of the State of Minnesota a false claim for payment or approval by the State of Minnesota in violation of MSA § 15C.01.

114. The State of Minnesota, unaware of the foregoing circumstances and conduct of the Defendant, made full payments that resulted in its being damaged in an amount to be determined.

115. Under the MFCA, the State of Minnesota is entitled to treble damages. Additionally, the State of Minnesota is entitled to the maximum penalty for each and every false and fraudulent claim paid or approved arising from the Defendant's fraudulent conduct as described herein.

## COUNT IV
## MINNESOTA FALSE CLAIMS ACT
**Minnesota Statutes Annotated § 15C.01 *et seq.***

116. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

117. By virtue of the acts described above, Defendant knowing made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Minnesota in violation of MSA § 15C.02.

118. The State of Minnesota, unaware of the foregoing circumstances and conduct of the Defendant, made full payments that resulted in its being damaged in an amount to be determined.

119. Under the MFCA, the State of Minnesota is entitled to treble damages. Additionally, the State is entitled to the maximum penalty for each and every false and fraudulent claim paid or approved arising from the Defendant's fraudulent conduct as described herein.

## COUNT V
## COLORADO FALSE CLAIMS ACT
## Colo. Rev. Stat. Ann. § 24-31-101 *et seq.*

120. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

121. This is a claim for treble damages and penalties under the Colorado False Claims Act ("CFCA"), Colo. Rev. Stat. Ann. § 24-31-101 *et seq.*

122. By virtue of the acts described above, Defendant knowingly presented to, made and/or used, and/or caused to be presented to, made and/or used by Colorado's Emergency Mortgage Assistance Program false or

fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed its actions, all in violation of the CFCA.

123. As a result, Colorado State Government moneys were lost through payments made in respect to the claims and other costs were sustained by the Colorado State Government.

124. Therefore, the Colorado State Government has been damaged in an amount to be proven at trial and is entitled to treble damages and penalties as permitted by statute.

## COUNT VI
## FLORIDA FALSE CLAIMS ACT
### FL Stat. § 68.081 *et seq.*

125. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

126. This is a claim for treble damages and penalties under the Florida False Claims Act ("FFCA"), FL Stat. § 68.081 *et seq.*

127. By virtue of the acts described above, Defendant knowingly presented to, made and/or used, and/or caused to be presented to, made and/or used by Florida's Homeowner Assistance Program false or fraudulent records or statements and false or fraudulent claims for payment and

30

approval, claims which failed to disclose material violations of law, and/or concealed its actions, all in violation of the FFCA.

128. As a result, Florida State Government moneys were lost through payments made in respect to the claims and other costs were sustained by the Florida State Government.

129. Therefore, the Florida State Government has been damaged in an amount to be proven at trial and is entitled to treble damages and penalties as permitted by statute.

## COUNT VII
## INDIANA FALSE CLAIMS ACT
## IN Code § 5-11-5.5-1 *et seq.*

130. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

131. This is a claim for treble damages and penalties under the Indiana False Claims Act ("IFCA"), IN Code § 5-11-5.5-1 *et seq*.

132. By virtue of the acts described above, Defendant knowingly presented to, made and/or used, and/or caused to be presented to, made and/or used by Indiana's Homeowner Assistance Program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed its actions, all in violation of the IFCA.

31

133. As a result, Indiana State Government moneys were lost through payments made in respect to the claims and other costs were sustained by the Indiana State Government.

134. Therefore, the Indiana State Government has been damaged in an amount to be proven at trial and is entitled to treble damages and penalties as permitted by statute.

### COUNT VIII
### IOWA FALSE CLAIMS ACT
### IOWA Code § 685 *et seq.*

135. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

136. This is a claim for treble damages and penalties under the Iowa False Claims Act ("IAFCA"), Iowa Code § 685 *et seq.*

137. By virtue of the acts described above, Defendant knowingly presented to, made and/or used, and/or caused to be presented to, made and/or used by Iowa's Homeowner Assistance Program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed its actions, all in violation of the IAFCA.

138. As a result, Iowa State Government moneys were lost through payments made in respect to the claims and other costs were sustained by the Iowa State Government.

139. Therefore, the Iowa State Government has been damaged in an amount to be proven at trial and is entitled to treble damages and penalties as permitted by statute.

## COUNT IX
## PAYMENT UNDER MISTAKE OF FACT

140. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

141. This is an action to recover monies paid by the United States and the States of Minnesota, Colorado, Florida, Indiana, and Iowa under a mistake of fact that was caused by Defendant through the activities described in the Complaint.

142. The United States and the States of Minnesota, Colorado, Florida, Indiana, and Iowa made payment under the erroneous belief that the records, statements, and proposed amount under which payment was based were true, correct, and proper.

143. The United States' and the FCA States' erroneous beliefs were material to the payment made by them.

144. Because of these mistakes of fact, the United States and the FCA States paid moneys to which Defendant was not entitled.

145. By reason of these payments, the United States and the FCA States have suffered damages in an amount to be determined.

## COUNT X
## UNJUST ENRICHMENT

146. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

147. This is an action to recover monies by which Defendant have been unjustly enriched. Due to Defendant's improper conduct, the United States and the States of Minnesota, Colorado, Florida, Indiana, and Iowa paid monies to which Defendant have been unjustly enriched.

148. The United States and the FCA States are entitled to damages in an amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator, on behalf of herself and the United States of America and the States of Minnesota, Colorado, Florida, Indiana, and Iowa, pray:

A.     That this Court enter judgment under Counts I and II against Defendant in an amount equal to three times the amount of damages the

34

United States has sustained because of Defendant's actions in violating the Federal False Claims Act, plus all applicable federal statutory penalties;

B.     That this Court enter judgment under Counts III through VIII against Defendant in an amount equal to three times the amount of damages the States of Minnesota, Colorado, Florida, Indiana, and Iowa have sustained because of Defendant's actions in violating the Minnesota, Colorado, Florida, Indiana, and Iowa False Claims Acts;

C.     That this Court enter judgment under Counts IX and X against Defendant for compensatory damages in an amount to be determined at trial;

D.     That Relator be awarded all costs incurred, reasonable attorneys' fees and expenses;

E.     That in the event the United States and/or the States of Minnesota, Colorado, Florida, Indiana, and/or Iowa intervene at the time this action is unsealed and proceeds with this action, that Relator be awarded an amount of at least 15% but not more than 25% of the proceeds of this action or settlement of the claims in Counts I-VIII; and

F.     That the United States, Relator, and the States of Minnesota, Colorado, Florida, Indiana, and Iowa receive all relief, both at law and equity, to which they are entitled.

## DEMAND FOR JURY TRIAL

Relator, on behalf of herself, the United States of America, and the States of Minnesota, Colorado, Florida, Indiana, and Iowa, demands a trial by jury on all issues of triable fact in the foregoing complaint.

**CHRISTENSEN LAW OFFICE PLLC**

Dated: November 7, 2023

Carl E. Christensen (MN #350412)
Christopher Wilcox (MN #392536)
305 North Fifth Avenue, Suite 375
Minneapolis, Minnesota 55401
(612) 473-1200
carl@clawoffice.com
chris@clawoffice.com

*Attorneys for Relator*

36